THOMAS KENNEALY, as Administrator, etc., of JOHN SULLIVAN, Deceased, Claimant, *v.* THE STATE OF NEW YORK, Defendant.

Claim No. 18502

Court of Claims, January 13, 1930.

468

[redacted]

*Bronner & Ward* [*E. A. McCarthy* of counsel], for the claimant.

*Hamilton Ward*, Attorney-General [*Jonathan D. Wilson*, Deputy Assistant Attorney-General, of counsel], for the defendant.

BARRETT, J.   John Sullivan, claimant's intestate, was at the time of his death in the employ of the State as assistant to a lock operator on lock 17 of the Barge canal, located at Little Falls. This lock, extending in an easterly and westerly direction, is of concrete construction and three hundred and ten feet long.   The west gate opens in the center and the east gate is a lift gate operated perpendicularly from a tower located at the east end of the lock, which tower rises about forty feet above the top of the lock.   The north side of the lock is filled in with dirt, while adjoining the lock on the south side is a reservoir three hundred and ten feet long used for the conservation of water.   On July 12, 1925, the date of the accident resulting in the death of claimant's intestate, there was from six to eight feet of water in the reservoir and the distance from the top of the south wall of the lock to the bottom of the reservoir was about forty feet.

The south wall of the lock beginning at its east end is about fifteen feet wide, descending perpendicularly to the reservoir, then suddenly narrowing to four or five feet wide by a jog or indention

sloping outwardly to the reservoir. On the south and north walls of the lock were snubber posts to which boats in the lock were fastened. On the edge of the south wall of the lock there was a curb or coping of concrete construction six inches high and twelve inches wide used for inclosing the wiring necessary in the operation of the lock.

The intestate's duties were to give or take a line as boats entered or left the lock, that is, to fasten the line upon boats entering the lock and to release the line of boats going out.

On July 12, 1925, claimant's intestate began his work at midnight and between that time and one o'clock A. M. of that day an east-bound fleet of boats was being lowered from the upper to the lower end of the lock. At that time the intestate was seen by the lock operator at the power house on the northeast corner of the lock and was then seen to start suddenly, in the words of the witness, " as though there were a line still on the wall," and to walk across the east end of the lock and turn to the south walking on the south wall of the lock. As he disappeared around the corner and onto the south wall the operator heard him shout and proceeded in the direction where he had gone but failed to find him. Later the water was drained off and the body of the intestate found in the reservoir near the corner of the jog or indention already referred to. This claim is for damages for his death alleged to have been caused by the negligence of the State.

It was the duty of the State to furnish the intestate with a reasonably safe place in which to work. There were no barriers or railings except the curbing referred to on the south wall of the lock over which the intestate had to walk in the performance of his duties and this wall between the lock on one side and the reservoir on the other constituted a dangerous situation which the State was bound to safeguard. Especially is this true in view of the fact that this wall suddenly narrowed from fifteen feet to four or five feet in width. The lock itself was lighted by eight lights. Two of them were on the east side of the tower, but with the tower between, they were of no value in lighting the south wall of the lock westerly of the tower and as a matter of fact the evidence discloses that instead of illuminating this south wall these lights cast the shadow of the tower upon the wall. Near the narrow part of the south wall, opposite which the body was found, was an iron valve house with a light on top, but this light worked automatically and did not light until the valve was completely closed and was not lighted at the time of the accident. There were other lights on the locks including one to the west, distant from one hundred and twenty-five to one hundred and fifty

feet from the narrow part of the south wall near which the body was found. This light was thirty-two or thirty-three feet high extending over the lock on an arm about four feet long. The evidence does not disclose that there was any light directly over the reservoir. The night was dark and rainy, and the light, between one hundred and twenty-five and one hundred and fifty feet away, which was the only light according to the evidence illuminating the south wall of the lock, was, we are satisfied, not adequate or sufficient to guide the intestate along the south wall under the weather conditions prevailing. The operator of the lock in the employ of the State so testified.

This operator was the last person to see the intestate alive. No one saw the accident itself, but in an action for damages for death caused by alleged negligence, the relevant conditions and circumstances surrounding and relating to the occurrence may be considered in the absence of direct proof and from such conditions and circumstances it may be determined what inferences of negligence are thereby created. (*Stump* v. *Burns*, 219 N. Y. 306.) Applying this rule to this claim, it is a fair inference from the surrounding facts and circumstances that claimant's intestate in the performance of his work fell off the wall where it suddenly narrowed to from four to five feet, and this conclusion is strengthened by the fact that the body was found in the reservoir near that point. It is also, we think, a fair inference to be drawn from the evidence that a barrier or railing would have prevented the accident. We, therefore, conclude that the State was negligent in fulfilling its obligation to furnish claimant's intestate with a safe place in which to work.

The burden was on the State to establish that the intestate was negligent. That fact may also be determined from the conditions and circumstances of the accident. There is nothing in the evidence that shows affirmatively the negligence of the intestate. He was at the time engaged in the performance of his work. He had but three or four days' familiarity with that work and the premises, and we are unwilling to hold that such a short acquaintance with the place, of itself, in view of the unusual weather conditions prevailing is sufficient basis for the conclusion that he was negligent.

Even if claimant's intestate momentarily forgot the difference in the width of the walls and fell to his death, or if he had forgotten momentarily the existence of the curbing on the edge of the wall and stumbled over that, he would not be chargeable upon those facts alone with contributory negligence as a matter of law. (*Boyle* v. *Degnon-McLean Construction Co.*, 47 App. Div. 311.)

Claimant's intestate at the time of his death was fifty-nine years

of age. He was unmarried and lived at Little Falls, N. Y., with his two sisters, one of whom was forty-eight years of age and the other fifty-one years of age. When working he contributed $8 weekly to the maintenance of the home occupied by himself and sisters and also paid the rent therefor in the sum of $14 monthly, in addition to contributing to the medical expenses of one sister who was in poor health. He had worked very little for a year previous to his death. The funeral expenses were $308, $200 of which was paid under the Workmen's Compensation Law. We are satisfied from all the evidence in this claim that an award of $3,500 should be made, and judgment for that sum is directed, with interest thereon from July 12, 1925.

ACKERSON, P. J., concurs.